**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TRINITY MEADOWS OWNERS ASSOCIATION, INC.** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 3:23-CV-00593-S** |
| **vs.** | § § | |
| **LANDMARK AMERICAN INSURANCE COMPANY,** | § § § | |
| **Defendant** | § § | |

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

COMES NOW Trinity Meadows Owners Association, Inc., (hereinafter referred to as "Plaintiff") complaining of Landmark American Insurance Company (hereinafter referred to as "Defendant" and/or "Landmark"), and respectfully show as follows:

**I.
PARTIES**

1.     Plaintiff is a Texas domestic non-profit corporation with its principal place of business in Dallas County, Texas.

2.     Defendant Landmark American Insurance Company is an insurance company engaging in the business of insurance in the State of Texas. No service is necessary at this time as Defendant has been properly served and has appeared in this lawsuit through counsel.

**II.
JURISDICTION**

1.      Pursuant to 28 U.S.C. § 1441, *et. seq.*, Defendant removed this case based on diversity of

citizenship under 28 U.S.C. § 1332 [Doc. 1].

2.       Additionally, this Court has jurisdiction over Defendant because this Defendant engages in the business of insurance in the State of Texas, and because Plaintiff's causes of action arise out of this Defendant's business activities in the State of Texas.

### III.
### VENUE

3.       Venue is proper in this District based on 28 U.S.C. § 1391(b)(2) in that a substantial part of the property that is the subject of the action is situated in this District Court, the Northern District of Texas, Dallas Division.

### IV.
### NOTICE AND CONDITIONS PRECEDENT

4.       Defendant has been provided notice, in writing, of the claims made by Plaintiff in this complaint, including Plaintiff's actual damages, in the manner and form required pursuant to TEX. INS. CODE § 542A.003. Plaintiff has received a copy of such notice.

5.       All other conditions precedent to suit or payment under the policy have been satisfied by Plaintiff, excused or waived by Defendant, or Plaintiff is excused from performance due to Defendant's prior breach of the policy. Defendant has not been prejudiced by Plaintiff's actions, inactions, or delays, if any.

6.       Any failures that may have occurred on behalf of the Plaintiff has not prejudiced the Defendant in this case.

### V.
### FACTS

7.       This lawsuit related to a claim for insurance proceeds for damages related to Plaintiff's commercial property as a result of a weather event.

A.   The Property and the Policy

---

8.     Plaintiff, while neither the owner nor the lessee of the property, is an association of owners of a commercial property located at 9696 Walnut Street, Dallas, Texas 75243 (the "Property"), which is comprised of leased or owned residential units. Plaintiff maintains an insurable interest in the property.

9.     At all material times, the Property was insured by insurance policy number LHD914481, issued by Defendant Landmark (the "Policy"). Plaintiff is the owner of the Policy and the named insured under the Policy.



**The Property – Walnut St. View**



**The Property**

B. <u>The Weather Event</u>

10.     On or about February 15, 2021, or another time when the Policy was in effect, a massive winter storm hit Texas causing substantial damage to millions of properties across the State ("Storm"). The winter storm lasted nearly a week, with its residual damages and effects lasting months. The Storm was reported by numerous news and weather agencies across the nation.

11.     As a result of the Storm, the Property sustained significant damage to a considerable amount of units with extensive interior damage. Trinity Meadows is comprised of 220 residential units, at least 48 of which were severely damaged by the winter Storm. The damages to the Plaintiff's Property as a result of the Storm constituted a covered loss under the Policy.

C. <u>The Claim and Defendant Landmark's Failures to Property Handle the Claim</u>

12.     Promptly after the Storm, Plaintiff made a claim and demand for payment on Defendant Landmark for damages to their Property as a result of the Storm, and other damages covered by the terms of the Policy and assigned claim number 7030155510 ("Claim").

13.    Once Plaintiff reported the claim it became incumbent upon Defendant to conduct a reasonable and thorough investigation of the claim, including determining the date or dates of losses, the cause of covered damage and the cost to repair covered damage.

14.    Defendant Landmark assigned various adjusters and/or claims handlers to work on the claim, including Jonna Holm, Russel Clark of Engle Martin & Associates ("EMA"). At all times material, these individuals and all other persons or entities involved with the Claim on behalf of Defendant Landmark were acting as Defendant's agents in the course and scope of their agency with Defendant Landmark. Accordingly, Defendant is liable for their acts and omissions.

15.    Despite its duties under the law and the Policy, to-date, and even following receipt of Plaintiff's Notice Letter on September 2, 2022, Landmark has failed to properly adjust, evaluate, and provide coverage for this claim as fully owed under the Policy.

16.    At all times material to the issues raised in this complaint, the Property was insured by insurance policy number LHD914481 issued by Landmark American Insurance Company, which was effective from August 16, 2020 to August 16, 2021 (the "Policy"). Trinity Meadows Owners Association, Inc. is the owner of the Policy and the named insured on the Policy. The Policy provides coverage for direct physical loss or damage to the Property. However, the Policy does not provide coverage for loss or damage to any building that has been vacant for more than sixty consecutive days before the loss or damage occurs. Significantly, the Policy specifically defines "Vacancy" as follows:

**7. Vacancy**

  **a. Description Of Terms**

    **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

      **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

      **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

        **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

        **(ii)** Used by the building owner to conduct customary operations.

17. Despite Plaintiff's cooperation with the investigation by providing information requested by Landmark, including submitting a sworn, signed proof of loss on August 10, 2021, Landmark continued to delay resolution of the Claim.

18. Defendant engaged in intentional delay tactics designed to delay full resolution of the Claim and frustrate the Plaintiff and the tenants at the Property.

19. For example, Defendant made numerous onerous requests for information from Plaintiff, most of which were entirely irrelevant or repetitive of previous requests that Plaintiff already responded to.

20. Defendant initially requested information on the tenants, the vacant units, information regarding the management companies, and a few other requests to which Plaintiff promptly and reasonably provided Defendant with the information known and available to it at the time

responsive to Defendant's requests. Despite receiving the requested information from Plaintiff in a prompt and timely manner, Defendant continued to request additional information over and over again, most of which were either initially responded to by Plaintiff or entirely irrelevant to the Claim and Defendant's adjustment of the Claim.

21.    Throughout the entire twelve months it took Defendant to adjust the Claim and issue a decision letter, Defendant continued to make numerous repetitive requests for information to Plaintiff designed to delay the Claim. Defendant could have, and should have, promptly adjusted the Claim yet it ignored the evidence of covered damages and all the information provided by Plaintiff in an effort to avoid full liability for the Claim and delay full resolution of the Claim at the detriment of Plaintiff and the tenants at the Property.

22.    It was not until approximately one year after the Winter Storm that Defendant Landmark finally made a decision on the Claim. On February 17, 2022, Defendant sent its claim decision letter to Plaintiff partially denying the Claim. Defendant's letter referenced the Policy's Vacancy provision to support the denial. The Denial Letter stated in part:

> The policy states that if the Building is not 31% occupied it is considered a vacant building and there is no coverage for water damage. Based upon the documentation received Buildings 19 and 21 are less than 31% occupied and these Buildings are considered vacant. Building 19 is 25% occupied based on square footage of the three occupied units and nine vacant units. Building 21 is 24% occupied based on

> The Denial Letter went on to add:

> The policy also states that we will not pay for loss or damage from water unless you do your best to maintain heat to the structure. Based upon the heating records there are only (5) Units that supplied heating records for the claimed water damage event. They are for Units, 305, 1606, 1607, 1703 and 1907. LAIC will be covering Units 305, 1607, and 1703. Presently there has not been any invoice for repairs to Unit 1606. As Unit 1907 is located in a Building 19 and it is less than 31% occupied, it is considered a vacant Building and there will not be coverage for Unit 1907.

23.    In its February 17, 2022 letter, Defendant made knowingly false representations about the damages and the information regarding the Property. Based on these representations, Defendant

stated it was paying $23,139.07 on the claim.

24.     Defendant's decision was based on information it had, or was available to it, at the very beginning of the Claim. Despite knowing of this information, Defendant delayed the Claim, frustrated the Plaintiff, and then took nearly one entire year to issue a decision and pay only $23,139.07 on this large loss.

25.     Landmark's denial was unequivocally wrong and a clear breach of the Policy. Plaintiff presented a Claim under the Policy for damages caused by the Winter Storm. It was Landmark's responsibility to conduct a reasonable and thorough investigation of the Claim to determine the specific causes of the loss, the amounts of loss, and to properly apply coverage under the terms and conditions of the Policy. Landmark failed to do so.  Rather, Landmark knowingly and intentionally misapplied the plain and unambiguous language of the Policy's Vacancy provision to wrongfully deny coverage for Plaintiff's Claim.  The Policy's plain language and Texas and Fifth Circuit law clearly demonstrate the Property was not "Vacant" and coverage should have been provided for the Claim.

26.     The policy at issue contains the following *Loss Condition* regarding *Vacancy*:

> **7. Vacancy**
>
> **a. Description Of Terms**
>
> (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:
>
> (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.
>
> (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
> (i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or
>
> (ii) Used by the building owner to conduct customary operations.

27.     Texas law, which applies, provides that insurance policies are construed according to common principles governing the construction of contract, and the interpretation of an insurance policy is a question of law for a court to determine. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel*, LLC, 620 F3d 558,562 (5th Cir. 2010). Where the disputed provision in the insurance policy is an exclusion, the insurer bears the burden of establishing the exclusion applies. Id.; see also Tex. Ins. Code § 554.002 ("[T]he insurer … has the burden of proof as to any avoidance or affirmative defense that the Texas Rules of Civil Procedure require be affirmatively pleaded. Language of exclusion in the contract or an exception to coverage claimed by the insurer … constitutes an avoidance or an affirmative defense").

---

28.     Courts give insurance policy language "its ordinary and generally accepted meaning unless the policy shows that the words are intended to impart a technical or different meaning." *Tesoro Ref. & Mktg. Co., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 96 F.Supp.3d 638, 644-45 (W.D. Tex. 2015) aff'd, 833 F.3d 470 (5th Cir. 2016). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous" and courts construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

29.     The Texas Supreme Court has made clear the "prime directive" of a court is to determine what the parties meant as expressed in their contract. URI, Inc. v. Kleberg Cty., 543 S.W.3d 755, 757 (Tex. 2018)(emphasis added).  A court presumes the parties intended what the words of their contract say. *Gilbert Texas Const., LP v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). When policy language is clear and unambiguous, a court's inquiry begins and ends with the policy language. *Balfour Beatty Construction, LLC v. Liberty Mut. Ins. Co.*, 2018 WL 6831113 at *3 (S.D. Tex. 2018).

30.     "Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W2d 552, 555 (Tex. 1991). "An intent to exclude coverage must be expressed in clear and unambiguous language." Id. at 555. "Texas law has consistently held that if an insurance coverage provision is susceptible to more than one reasonable interpretation, the court must interpret that provision in favor of the insured, so long as that interpretation is reasonable. Id. The court must do so "even if the insurer's interpretation is *more* reasonable than the insured's." *In re Deepwater Horizon*, 728 F.3d 491, 499 (5th Cir. 2013).

31.     The policy states "As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth … below." The policy then identifies two conditions regarding the

applicable definitions of "vacant." One definition of "vacant" applies "When this policy is issued to a tenant" and the other "When this policy is issued to the owner or general lessee of a building." Thus, the policy's own language limits the applicability of the vacancy limitation to two situations: (1) when the named insured is a tenant; and (2) when the named insured is the owner or general lessee.

32.     Here, the policy was issued to: Trinity Meadows Owners Association, Inc., which is neither a tenant, nor the owner or general lessee of the property. It is an association tasked with certain maintenance and groundskeeping responsibilities (creating the insurable interest), but neither owns nor leases the property. Thus, neither of the conditions that would trigger applicability of the vacancy clause were met, rendering application of the clause improper.

33.     Landmark's improper handling of the Claim subjects it to liability pursuant to Tex. Ins. Code § 541.001, *et seq.* LANDMARK violated Tex. Ins. Code § 541.060(a) and engaged in Unfair Settlement Practices by A) Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue. Specifically, Landmark represented to Plaintiff that Policy does not provide coverage for the Claim relying on the Vacancy provision contained within the Policy when in fact the Policy unambiguously provides coverage for the Claim under the plain language of the definition of Vacancy because Plaintiff was using 100% of the building square footage to conduct its customary operations. B) Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Landmark's liability under the Policy was reasonably clear. More specifically, even though Landmark's liability under the Policy has always been reasonably clear, Landmark wrongfully denied coverage for the Claim in full. Landmark acted in bad faith when it ignored the obvious language "used by the building owner to conduct customary operations" and instead relied only upon a calculation of a percentage of leased units to

contend the building was Vacant. C) Refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim. Landmark's investigation was clearly unreasonable because it failed to apply the plain and unambiguous language of the Policy to provide coverage to Plaintiff for the Claim. Had Landmark conducted a reasonable and thorough investigation of the Claim it would have determined the actual amount of Trinity Meadows' losses and appropriately afforded coverage for such losses.

34.      Importantly, despite informing Plaintiff in its decision letter of February 17, 2022 that it considered some of the buildings vacant under the Policy, thus resulting in the gross undervaluation and payment of the Claim, Defendant itself, as well as its third-party administrator Engle Martin & Associates, had previously determined that the Property was not considered vacant and the loss was not excluded under the Policy's vacancy provision. As early as May 6, 2021, Defendant was aware that at least twenty-three units were occupied, per EMA's report to Defendant. In fact, in EMA's March 6, 2021 report, it informed Defendant that the Claim can move forward with the adjustment of the twenty-three units that were confirmed occupied, and that EMA's "consultant will confirm that these units were occupied."

35.      In fact, Defendant was put on notice by EMA as early as March 16, 2021 that the damages will likely be $1,750,000 at a minimum. EMA informed Defendant of this estimation of the damages all throughout the claims handling.

36.      Soon after, Defendant learned through EMA that the Property would not be excluded from the Policy's vacancy since, per Defendant's own instruction to EMA, more than thirty-one percent of the units at the Property were occupied. EMA confirmed that in fact over forty percent of the units were occupied, thus allowing coverage to apply under the Policy:

You have stated that 31% of the units must be occupied in order for coverage to apply.

The Insured / attorney has sent us a schedule showing the status of (221) units.  Per the schedule attached to our SOL.  There are 89 occupied units which is 40.27%.  89 units

37.     Defendant evidently knew of the occupied units at the Property which would allow for coverage under the Policy, as well as its notice of EMA's estimation of the damages being $1,750,000, and for these specific reasons it intentionally delayed resolution of the claim and ultimately misrepresented the damages, the applicable policy provisions, and other pertinent and material facts pertaining to the loss in an effort to avoid its liability under the Policy. Defendant's liability on the Claim and under the Policy was reasonably clear from the outset of its investigation, yet, it failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's Claim.

38.     Each of the foregoing unfair settlement practices was completed knowingly by Landmark and was a producing cause of Plaintiff's injuries and damages.

39.     To-date, and in direct violation of the Policy, the Texas Insurance Code, and the Common Law Duties of Good Faith and Fair Dealing, Defendant has failed to issue a full payment to Plaintiff.

40.     Defendant Landmark failed to comply with the Policy, the Texas Insurance Code, and Texas law in handling Plaintiff's claim. Further, Defendant Landmark has refused to pay all amounts due and owing under the Policy for the Claim.

41.     From the start of the investigation, Defendant Landmark and its adjusters engaged in intentional delay tactics designed to frustrate its insured. It is clear that upon receipt of the Sworn Proof of Loss of $1,312,316.65 Defendant Landmark decided to engage in a campaign of delay and obfuscation, clearly designed to "wait out" its insured to attempt to run out the applicable limitations period and thus avoid liability altogether. Its clear scheme to limit its own liability, and

completely ignore its insured's valid claim was in violation of the Policy terms and Texas law.

42.    Despite the damages being evident, and despite Defendant Landmark's liability being reasonably clear, Defendant and its adjusters ignored their own internal reports, ignored the deadlines set forth by the Texas Insurance Code, ignored its insured and its representatives, and ignored the claim altogether.

43.    Had a proper investigation been performed in good faith, Landmark would have made payment in full as the damages were identified. That did not happen here.

44.    Plaintiff, and counsel hired on behalf of the Plaintiff, provided Defendant Landmark with numerous documents and information evidencing the covered losses at the Property.

45.    Although Defendant Landmark received numerous documents evidencing the damages, it continued to ignore pertinent information relating to the claim.

46.    Defendant Landmark continued to frustrate the insureds and made numerous misrepresentations regarding coverage of the actual damages. Defendant disputed numerous items of damages with the insureds that were otherwise covered losses.

47.    Without any explanation, Defendant refused to issue full payment for these covered losses. These costs and damages were fully covered under the Policy, yet Defendant simply refused to abide by the terms and conditions of the Policy and continued to misrepresent the damages and undervalue the loss, causing injury and harm to Plaintiff.

48.    The Policy and the law were not followed by Defendant. Defendant presented no reasonable explanation for its failure to pay these damages. These damages are covered under the Policy, and instead of paying the full amount it knew it owed under the Policy, Defendant instead continued to misrepresent the damages and the extent of loss.

49.    Defendant knew, or should have known, the damages were covered during its investigation,

but intentionally ignored such evidence and continued to undervalue the claim.

50.     Despite all reasonable efforts made by Plaintiff to work with Defendant Landmark and its agents towards a prompt and fruitful resolution of the Claim, Defendant has refused to make full payment as owed under the Policy. Defendant had numerous opportunities to comply with the Policy and the Texas Insurance Code, however Plaintiff has yet to be compensated for its losses covered under the Policy.

51.     Plaintiff presented a Claim under the Policy for damages caused by the Storm. It was Defendant's responsibility, not the insureds', to conduct a reasonable and thorough investigation of the Claim to determine the specific causes of the loss and the amounts of loss. Defendant Landmark failed to do so. Although Defendant and its agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they failed to do so.

52.     Rather than accept the significant amount of covered losses and damages caused by the Storm, Defendant Landmark engaged in a coordinated and determined scheme to avoid liability on the claim and avoid full payment on the claim, including maintaining silence in response to Plaintiff's numerous requests, clearly hoping to Plaintiff would miss the statute of limitations, thus excusing Defendant from performance of its legal obligations.

53.     To date, Defendant Landmark has delayed full payment on the Claim as owed under the Policy, and continues to delay full resolution of the Claim, causing Plaintiff further injury and damages.

54.     Defendant misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was covered by the Policy. Defendant failed to conduct a proper and timely investigation and misrepresented to Plaintiff about the coverage of the Policy. Thus, its denial to fully compensate Plaintiff was a misrepresentation of the Policy. Defendant's

conduct constitutes a violation of TEX.INS.CODE §541.060(a)(1).

55.     Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's Claim, when Defendant's liability was reasonably clear. Specifically, Defendant adjusted the entire Claim with an outcome-oriented approach and failed to commence a proper investigation of the Claim. This resulted in Defendant's delayed completion of the investigation of the Claim. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(2)(a).

56.     Defendant failed to explain to Plaintiff the reasons for its failure to offer any kind of settlement.  Specifically, Defendant failed to offer Plaintiff adequate compensation, without any proper explanation why full payment was not being made.  Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did Defendant provide any reasonable explanation for the failure to adequately settle Plaintiff's claim.  Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(3).

57.     Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claims, in writing from Defendant despite Plaintiff's attempts for a timely resolution. Defendant continued to rely on misrepresentations, obfuscation, and silence, and refused to adjust or fully account for the documents presented to them evidencing storm damage to the Property as a result of the subject Storm event. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(4).

58.     Defendant refused to fully compensate Plaintiff for the Claim without conducting a reasonable investigation of the Claim.  Rather, Defendant performed an unreasonable outcome-

oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's Claim.  Defendant ignored the documents and information evidencing the storm damages at the Property and continued to rely on misrepresentations about the Property, the Storm, and covered perils under the Policy. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(7).

59.    Defendant failed to meet its obligations under the Texas Insurance Code regarding the timely acknowledgement of Plaintiff's claim, beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim.  Defendant's conduct constitutes a violation of TEX.INS.CODE §542.055.

60.    Defendant failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information.  Defendant's conduct constitutes a violation of TEX.INS.CODE §542.056.

61.    Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay.  Specifically, Defendant has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not yet received full payment for its claim as owed under the Policy. The Property's covered damages under the Policy were made known to Defendant at the outset of the Claim investigation, yet Defendant refused to comply with its obligations and make payments owed under the Policy. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.058.

62.    From and after the time Plaintiff's claim was presented to Defendant, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever

on which a reasonable insurance company would have relied upon to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

63.    Defendant knowingly and/or recklessly made false representations, as described above, as to material facts and/or knowingly concealed material information from Plaintiff.

64.    Because of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firm who is representing Plaintiff with respect to these causes of action.

## VI.
## CAUSES OF ACTION AGAINST DEFENDANT LANDMARK

65.    Defendant Landmark is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code and intentional breach of the common law duty of good faith and fair dealing.

66.    Plaintiff reincorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

### A.    Breach of Contract.

67.    The Policy is a valid, binding, and enforceable contract between Plaintiff and Defendant Landmark. Defendant breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law. Defendant's breach proximately caused Plaintiff's injuries and damages.  All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

### B.    Noncompliance With Texas Insurance Code: Unfair Settlement Practices.

68.    The conduct, acts, and/or omissions by Defendant constituted Unfair Settlement Practices pursuant to TEX. INS. CODE.§541.060(a).  All violations under this article are made actionable by

TEX.INS.CODE §541.151.

69.    Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX.INS.CODE §541.060(1).

70.    Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX.INS.CODE §541.060(2)(A).

71.    Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(3).

72.    Defendant's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(4).

73.    Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiff's Claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(7).

74.    Defendant's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered.

This continued failure compelled Plaintiff to file suit. TEX. INS. CODE §542.003(5).

### C.    Prompt Payment Of Claims Violations.

75.    The Claim is a claim under an insurance policy with Defendant Landmark of which Plaintiff gave Defendant prompt and timely notice.  Defendant is liable for the Claim. Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by:

a) Failing to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiff all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS. CODE §542.055. Specifically, Defendant failed to commence a proper investigation of the Claim and failed to request the documents and other forms it required to properly adjust Plaintiff's Claim within a reasonable time and manner. Defendant received notice of the loss promptly after the Storm, but failed to promptly investigate, and when it did it conducted an improper subpar investigation that resulted in a gross undervaluation of the damages and a wrongful partial denial of the claim. Defendant continued to delay performing a full and proper investigation of the Claim and continued to conduct an inadequate analysis of the Claim.;

b) Failing to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE §542.056. Defendant failed to provide Plaintiff with a proper explanation of their Claim decision. Specifically, Defendant delayed a coverage determination, despite having all the information it required to make such determination. Even after its claim decision, it failed to provide an explanation of the basis for its reasoning and failed to account for all aspects of the claim, leaving some issues undetermined. This caused Plaintiff further injury and damages which Defendant was put on notice of; Defendant failed to act on this. Defendant provided no reasonable explanation or justification for its unreasonable delays. Defendant failed to provide a proper explanation of their denial. Defendant relied on misrepresentations about the covered losses and the policy as a basis for its claim decision.; and/or by

c) Delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE §542.058. To date, Defendant has refused to pay the full amount owed under the Policy for the Claim. Defendant continues to delay full resolution of the Claim by refusing to properly adjust Plaintiff's Claim.

76.    Defendant's violations of these prompt payment of claims provisions of the Texas Insurance Code are made actionable by TEX. INS. CODE §542.060.

### D.    Breach Of The Duty Of Good Faith And Fair Dealing.

77.    Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendant knew or should have known that its liability to Plaintiff was reasonably clear.  Defendant's conduct proximately caused Plaintiff's injuries and damages.

## VII.
## KNOWLEDGE

78.    Each of Defendant's acts described above, together, and singularly, were done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VIII.
## DAMAGES

79.    Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

80.    For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorney fees.

81.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorney's fees.  For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages.  TEX.INS.CODE §541.152.

82.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, penalty interest per annum (calculated by adding five (5) percent to the current interest rate as determined by the Board of Governors of the Federal Reserve System) of the amount of Plaintiff's claim as damages, together with attorney's fees. TEX.INS.CODE §542.060.

---

83.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

84.     As a direct and foreseeable result of Defendant's acts and omissions in the mishandling of Plaintiff's claim, breach of contract, and violations of the Texas Insurance Code, Plaintiff suffered consequential damages which Plaintiff is entitled to recover.

85.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firms whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## IX.
## JURY DEMAND

86.     Plaintiff has timely requested a jury trial and tendered the appropriate jury fee. [Doc. 1-7].

## X.
## PRAYER

87.     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity,

to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**GREEN KLEIN WOOD & JONES**

By:   */s/  Hunter M. Klein*
HUNTER M. KLEIN
State Bar No.: 24082117
klein@greentriallaw.com
ROBERT D. GREEN
State Bar No.: 08368025
green@greentriallaw.com
DELARAM FALSAFI
State Bar No. 24113083
falsafi@greentriallaw.com
408 East 7th Street
Houston, Texas 77007
Telephone: (713) 654-9222
Facsimile: (713) 654-2155

**-and-**

**Gauthier Murphy & Houghtaling LLC**
YULIA HOUGHTALING*
yulia@gmhatlaw.com
3500 North Hullen Street
Metairie, LA 70002
Telephone: (504) 456-8600
*Pro Hac Vice Application to be Filed*

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of May 2023, this document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) as follows:

Jay W. Brown
Melissa Arvizu
SHACKELFORD, BOWEN, MCKINLEY NORTON, LLP
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Telephone: (832) 415-1721
Facsimile: (832) 415-1095
jbrown@shackelford.law
marvizu@shackelford.law

Blair Beene
SHACKELFORD, BOWEN, MCKINLEY NORTON, LLP
9201 N. Central Expressway, Fourth Floor
Dallas, Texas 75231
Telephone: (214) 780-1400
Fax: (214) 780-1401
bbeene@shackelford.law

**ATTORNEYS FOR DEFENDANT**

*/s/ Hunter M. Klein*
Hunter M. Klein